## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Richard Blackburn, #199392, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:06-2011-PMD-BM |
| | ) | |
| v. | ) | |
| | ) | |
| State of South Carolina, | ) | |
| SC Department of Corrections, | ) | **REPORT AND RECOMMENDATION** |
| John Ozmint, Director of SCDC, | ) | |
| Robert Ward, Regional Director of SCDC, | ) | |
| Robin Chavis, ECI Associate Warden, | ) | |
| Ms. Sprattling, ECI Grievance Clerk, | ) | |
| Sandra Bowie, Chief Grievance Branch, | ) | |
| Pravin R. Patel, ECI Physician; and | ) | |
| Dr. Glenn Alewine, Deputy Director | ) | |
| Medical Services, | ) | |
| | ) | |
| Defendants. | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, a frequent filer of litigation in this District, originally presented a "laundry list" of claims in a thirty one (31) page Complaint, as amended by a First Amended Complaint (Court Docket Numbers 7 and 10). Following the filing of numerous motions, an order was entered on December 7, 2006, allowing Plaintiff to file a new Complaint to encompass all of his claims as well as setting forth exactly who was being named as a defendant in this case. Plaintiff thereafter filed a new forty three (43) page Amended Complaint on December 28, 2006. See (Court Document Number 43).

The Defendants thereafter filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 28, 2008. As the Plaintiff is proceeding pro se, a Roseboro Order was entered by the Court on May 29, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that





1

if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion, with some 75 attached exhibits, on August 1, 2008. Defendants thereafter filed a reply memorandum on September 10, 2008. Defendants' motion is now before the Court for disposition.[1]

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions to dismiss and/or summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.



# I.

### (Exhaustion of Administrative Remedies)

Defendants first assert, <u>inter alia</u>, that this entire case should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit.  Pursuant to 42U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions[2] under section1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies.  <u>See</u> <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; <u>Jones v. Bock</u>, 127 S.Ct. 910 (2007).  To meet this burden, Defendants note that Plaintiff himself states in his verified complaint[3] that the only grievance he filed

---

[2]There is no definition for the term "prison conditions" contained in § 1997e.  The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

<u>Hartsfield v. Vidor</u>, 199 F.3d 305, 308 (6th Cir. 1999) (quoting 18 U.S.C. § 3262(g)(2)); <u>Almandiv v. Ridge</u>, 201 Fed.Appx. 865 at *2 (3d Cir. 2006); <u>Neal v. Goord</u>, 267 F.3d 116, 2001 WL 1178293 (2d Cir. Oct 04, 2001) (quoting <u>Lawrence v. Goord</u>, 238 F.3d 182, 185 (2d Cir. 2001) (<i>per curiam</i>)).

[3]In this Circuit, verified complaints by <u>pro se</u> prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).  Plaintiff has filed a verified Complaint.  Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



concerning the claims raised in his Complaint was grievance #929-03, filed November 3, 2003, and that as of the date of the filing of the original Complaint (July 13, 2006) he had not received a final determination on that grievance. See Verified Amended Complaint, p. 2, ¶ II. Defendants have also submitted an Affidavit from Sandra Bowie, the inmate Grievance Administrator for the South Carolina Department of Corrections, who attests that Plaintiff filed only two grievances in 2003 that were processed, the first being ECI 825-03 (dated October 14, 2003), and the second being ECI 929-03 (dated November 3, 2003), which is the one Plaintiff references in his Complaint. Copies of both of these grievances are attached to Bowie's Affidavit.

Grievance ECI 825-03 concerns Plaintiff running out of medications for four days in September/October 2003. In an attachment dated October 28, 2003, Plaintiff complains about Dr. Patel and asks that he get treatment for his back and elbow, to have his "Glucophage" increased, and for his "CPAP" to be fixed.[4] This grievance further reflects that corrective action was taken, and that Plaintiff accepted the action taken and considered the matter closed. See Bowie Affidavit, Exhibit A.

With respect to ECI 929-03 (the grievance Plaintiff cites in his Amended Complaint as being the grievance related to his claims), Bowie attests that when she was assigned to supervise the inmate grievance coordinators at the Evans Correctional Institution (where Plaintiff was housed during the relevant time period) in 2003, she discovered approximately twelve hundred unprocessed grievances. Bowie attests that she then took immediate steps to meet with inmates to determine

---

[4]While this attachment is a part of Exhibit A, which is grievance 825-03, it is actually a separate grievance form from the grievance form dealing solely with medications. However, since both of these grievance forms are shown as being Exhibit A, it is apparent that Bowie believes that both of these grievance forms were handled together. See Bowie Affidavit,¶ 6. Plaintiff does not dispute this assertion in his filings, and indeed the undersigned cannot find (although Plaintiff's filings are quite voluminous) where Plaintiff even discusses Grievance ECI-825-03.

4



whether these grievances still needed processing, and that she met with the Plaintiff on July 21, 2004, concerning grievance ECI 929-03.  Bowie attests that this grievance was received by Scott Johnson on November 6, 2003, and was later denied by Johnson on February 11, 2004, but that this response was never served on the Plaintiff.  Bowie attests that during her meeting with the Plaintiff concerning this grievance he informed her that he sought to pursue the grievance.

Bowie attests that grievance ECI 929-03 asserts complaints about the conditions at ECI and accommodations for inmates with disabilities inside the special management unit (SMU) at ECI.  See also, Bowie Affidavit, Exhibit B.  Bowie attests that by the time she met with the Plaintiff concerning this grievance on July 21, 2004, Plaintiff had already been released from the SMU, thereby making the grievance moot.  Bowie attests that as of the date of her Affidavit, January 23, 2007, this grievance remains unprocessed (although it ultimately will be processed).  Bowie attests that since Plaintiff is no longer in the SMU, she is giving greater attention to other grievances at this time, which she considers of greater import and significance.

For his part, Plaintiff has provided numerous exhibits as attachments to his response to summary judgment, including legal memoranda, letters, Request to Staff Member (RTSM) forms,[5] affidavits (including affidavits from other prisoners), and various medical articles and pamphlets. With respect to grievances, however, in his brief Plaintiff again only references grievance ECI 929-03, noting that (at least as of the date of his memorandum) it had still not been responded to.  See

---

[5]The numerous inmate "request" forms Plaintiff submitted to prison officials should not be confused with Plaintiff's grievances. Request to staff forms are not grievances, and Plaintiff being dissatisfied with responses to his inmate request forms does not constitute the exhaustion of the prison grievance process. Rather, to exhaust his administrative remedies, Plaintiff would have had to have pursued *grievances* concerning these issues if he did not receive the response(s) he desired to his request forms.  Davis v. Minthorn, No. 05-326, 2006 WL 2222700  (E.D.Tenn. Aug. 2, 2006) [Submission of inmate request form not sufficient to exhaust grievance remedy].



Plaintiff's Brief, p. 12.[6]

After a review of these exhibits as well as the arguments presented to the Court, the undersigned concludes that Plaintiff is entitled to pursue any claims asserted in grievance ECI 929-03 as part of this lawsuit, notwithstanding the fact that that grievance has yet to be fully exhausted. It is readily apparent that Plaintiff filed this grievance in 2003, and has indicated to prison officials that he wants pursue this grievance. Further, even though Bowie attests that this grievance will be processed, Plaintiff should not be expected to wait three (3) years to have a grievance processed before he can pursue claims related thereto in federal court. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]; cf. Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) [holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance]. Therefore, to the extent Plaintiff's Complaint encompasses claims relating to this grievance, they are properly before this Court for disposition.

However, with respect to any claims asserted in grievance ECI 825-03, the undersigned finds that the Defendants have met their burden of showing a failure to exhaust these

---

[6]Plaintiff also at various times argues that he is not required to exhaust prison remedies because he is pursuing disability claims or that his complaints are otherwise non-grievable offenses. In an Affidavit attached to his Memorandum, Plaintiff references grievance ECI 929-03, as well as some grievances he purportedly filed in other years. Copies of some of these grievances are sprinkled among his filings, while others are not.

6



claims, as the grievance itself reflects that it was resolved and bears the Plaintiff's signature.[7]  Nor

has Plaintiff presented any evidence whatsoever to refute Defendant's evidence showing that he failed

to pursue any other claims in 2003 through the grievance process, other than the claims referenced

in  grievance ECI 929-03.  In sum, the Defendant's evidence, and indeed Plaintiff's own verified

Amended Complaint and exhibits, support a finding by this Court that Plaintiff failed to exhaust his

administrative remedies with respect to any other claims.[8]  *Cf.*  Hyde v. South Carolina Dep't of

Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available

to determine a question of fact, one must purse the administrative remedy or be precluded from

seeking relief in the courts"]; see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829

(E.D.Pa. 2003)[Summary judgment granted where Plaintiff claimed to have exhausted administrative

remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue

---

[7] This would include any claims addressed in the separate grievance form dated October 28, 2003.  Bowie's affidavit indicates that this separate grievance form was considered as part of grievance ECI 825-03 and was fully resolved, and, as previously noted, in response to Bowie's Affidavit and the arguments set forth in Defendants' motion, Plaintiff has failed to offer any argument to refute the statements made by Bowie in her Affidavit, nor does he even reference any grievance dated October 28, 2003 or make any arguments other than with respect to grievance ECI 929-03.

[8]While, as previously noted, Plaintiff references grievances he filed in other years in some of his filings, Plaintiff does not cite or refer to those other grievances in his Complaint as being the basis of his claims.  In any event, any claims from 2002 or earlier would be barred by the applicable statute of limitations.  See S.C.Code §15-3-535 (1976); see also Burgess v. American Cancer Society, 325 S.E.2d 541 (S.C. 1985).  Further, to the extent Plaintiff has referenced other grievances from other years in his affidavits filed in opposition to summary judgment, it would not be proper to allow Plaintiff to add or change his theories of liability at this late date.  Plaintiff has already been allowed to amend his Complaint twice, and he was specifically placed on notice that only the claims set forth in his second Amended Complaint would be considered.  The Defendants are entitled to know what claims they are being charged with and should not be presented with a "moving target" of allegations to which they have to respond.  Cf Kelly v. Olin, No. 06-2448, 2008 WL 650429 at * 6 (D.Colo. 2008); Owens v. Campbell, No. 06-427, 2007 WL 2128244 at * 4 (D.S.C. 2007).  Therefore, to the extent Plaintiff references new claims or grievances in his affidavit and exhibits, they have not been considered.



his administrative remedies].  Even if Plaintiff had attempted to exhaust his administrative remedies with respect to some additional claims after he filed this lawsuit, and had in fact succeeded in doing so (of which there is no evidence), that would not allow Plaintiff to now proceed with those claims in this lawsuit.  <u>Cannon v. Washington</u>, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; <u>Freeman</u>, 196 F.3d at 645 [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."].  Therefore, Plaintiff may proceed only with any claims asserted in this lawsuit which were also asserted in grievance ECI 929-03.  <u>Jones v. Bock</u>, 127 S. Ct. at 923-925 [Where prisoner asserts both exhausted and unexhausted claims in a lawsuit, Court should proceed to consider exhausted claims rather than dismiss entire lawsuit].

## II

### (Exhausted Claims)

**Evidence Submitted.**  Plaintiff complains in grievance ECI 929-03 that, while in the special management unit at ECI, he was placed in a room that failed to accommodate his various disabilities and/or handicaps.[9]  Plaintiff claims that he was injured in a fall due to there being no grab bar for the toilet, and that the Defendant Dr. Patel refused treat his injuries.  Plaintiff further claims that he was denied a shower for ten (10) days, that he was denied a "shower chair", that he was unable to take a shower "numerous times" because he was last on the shower list, that the shower had no grab bars and their was no fixed position for the showerhead, that he was denied outside recreation for seventy three (73) days, that his blood sugar was allowed to dip into the "diabetic coma range",

---

[9]Plaintiff was in the SMU from on or about July 11, 2003 to September 23, 2003.  <u>Chavis Affidavit</u>.  By Plaintiff's allegations, he is a diabetic, morbidly obese, and primarily uses a wheel chair to ambulate.  <u>See</u> Plaintiff's Memorandum in Opposition, pp. 7, 30; <u>see</u> <u>also</u> Plaintiff's Affidavit, ¶ 3.



that he was denied therapy for his leg, was denied his walking cane, was denied his CPAP breathing machine during the day, was denied his "therapy band" for therapy for his arm, and was denied access to proper medical care in general.  See generally, Bowie Affidavit, Exhibit B.

Plaintiff asserts several claims related to this grievance in his verified Amended Complaint. Plaintiff alleges that he was "locked up for 75 days in a room with no handicap accessability", that he received no outside recreation "for 75 days as the recreation yard was not handicap accessible", and that he received "no shower for the first 10 days, then only 1 or 2 times a week thereafter at best because all other inmates had to go first . . . .".  See Complaint, ¶¶ 4-6. Plaintiff also repeats the allegations from his grievance concerning his medical problems and needs, and how he was not provided with proper medical care and attention.  Id., at ¶¶ 13-15.  Plaintiff details how he believes his cell in the SMU violated the ADA guidelines (¶. 18), the injury he suffered as a result of the cell toilet not having a grab bar (¶. 19), and his problem with the shower. (¶ 20).  Plaintiff alleges that he was unable to do even a "little bit of walking" because he was denied his walking cane, that he was not provided with his "therapy band" for arm exercises until August 5, 2003, and that his blood sugar was allowed to run dangerously low even though he warned medical personnel of the danger of him slipping into a diabetic coma.  Id. at ¶¶ 21-22.  With respect to his CPAP breathing machine, Plaintiff alleges that he was only provided with an extension cord to use this machine for breathing at night, meaning he could have died during the day because he was unable to use the machine during the day even though he suffers from sleep apnea.  Id. at 23.  Plaintiff also alleges he was denied a pillow while he in the SMU, even though he needs to sleep with a pillow due to a deformed back as well as hip injuries, which require a pillow to be placed between his legs while sleeping.  Id. at ¶¶ 24-25.

Specifically with respect to Dr. Patel, Plaintiff alleges that Dr. Patel took him off of



his daily blood sugar test, which "effectively reduced [his] insulin", and that by doing so Dr. Patel "intentionally sought to cause me injury, tortuous pain, [and] loss of life expectancy." Id. ¶ 53.[10] Plaintiff alleges that Dr. Patel's actions were in contravention of proper diabetic care and therapy for patients. See generally, ¶¶ 55-65. Plaintiff further complains that Dr. Patel treated him improperly for his peripheral neuropathy, prescribing him a drug with dangerous side effects (Nortriptyline). Id. ¶ 67.[11]   Plaintiff alleges that another Defendant, Dr. Allewine, refused to place him on proper psychiatric medication, even though the medication had been prescribed by a psychiatrist (Dr. Kirby). Id. ¶¶ 69-71. Plaintiff alleges that due to the improper medical care he has received, he has been affected emotionally, psychologically and physically. Plaintiff seeks both injunctive relief, and monetary damages. See generally, Amended Verified Complaint.

In support of their Motion for Summary Judgment, the Defendants have provided numerous Affidavits and Exhibits. With respect to the viable, exhausted claims set forth in the Complaint, the Defendant Pravin Patel has submitted an Affidavit where he attests he is a board certified physician licenced to practice medicine in South Carolina, employed by the South Carolina Department of Corrections as an internist at the Evan Correctional Institution. Dr. Patel attests that he has seen and examined the Plaintiff on numerous occasions, particularly for his diabetic condition,

---

[10]This complaint deals with alleged conduct from 2005, outside the scope of Plaintiff's exhausted grievance. See Amended Complaint, ¶ 50.

[11]With respect to these allegations, as well as complaints Plaintiff asserts about the dental services he received at ECI and (apparently) his complaints about Dr. Alewine, these allegations are not tied to his placement in the SMU, the subject of grievance ECI 929-03. See Verified Complaint, pp. 80-81. However, while these claims are not technically a valid part of this lawsuit, since Plaintiff discusses these complaints in his affidavits, the undersigned has generally addressed Plaintiff's overall medical complaints as part of the consideration of Plaintiff's claims.



and that at no time between July 11, 2003, and the "present day"[12] has Plaintiff's diabetic condition caused him any significant distress, physical injury, or emotional injury. Patel attests that this fact is confirmed by Plaintiff's medical record, which is attached to his Affidavit as an Exhibit. Patel attests that Plaintiff's diabetic condition has always been well regulated, and while it is true that Plaintiff's blood sugar levels have varied considerably and that he may have symptoms of diabetic neuropathy, he has never been in any distress as a result of his diabetic condition or treatment thereof. Patel further attests that the only time he can recall Plaintiff's blood sugar and insulin levels being well maintained and stable was during the period of time in July and August of 2003, when Plaintiff was in the SMU, and therefore unable to access candy and other unhealthy processed foods in the prison's canteen. Patel attests that, during that period of time, Plaintiff's blood sugar levels remained close to normal since his diet was being regulated.

Patel attests that Plaintiff's medical records also demonstrate that he has been under constant supervision by nurses and physicians checking his blood sugar levels and insulin levels on, at least, a daily basis, and that during Plaintiff's years as an inmate at ECI the number of tests for blood sugar levels administered to him has varied from one test per day to three tests per day. Patel attests that in February 2005 alone, Plaintiff visited and was examined in the diabetic clinic each day between February 1 and February 7, 2005, that on February 7, 2005 he examined Plaintiff in the diabetic clinic and observed that he had a good technique in self administering insulin, and that Plaintiff was advised to maintain a good diet and exercise regularly. Patel attests that, at that time, he did not believe that Plaintiff required continuous daily visits to the diabetic clinic as he was able to administer insulin shots on his own and his blood sugar level was not out of control. Plaintiff was

_____

[12]Patel's Affidavit is dated January 19, 2007.



also receiving medications (Nortyptilin) during this time for his diabetes. Patel attests that, after that date, Plaintiff did not appear for sick call again until February 25, 2005, at which time he only sought to renew his medications and obtain natural vegetable power. When Plaintiff returned to the lab clinic on March 12, 2005, it was noted that he was in no distress diabetically or otherwise. Patel attests that a review of Plaintiff's canteen list since February 2005, reveals that Plaintiff has purchased such items as Pepsis, tobacco, chips, cookies and candy multiple times, and that he [Patel] believes that Plaintiff's continued consumption of junk food and candy has caused Plaintiff's blood sugar levels to increase and thereby cause his diabetic neuropathy.[13]

Patel attests that he examined Plaintiff on August 12, 2005 for complaints of increased pain in both feet, at which time Plaintiff stated that he wanted Neurontin. Patel attests that Nortirptylin is the standard medication used by the SCDC for the treatment of neuropathy, and that he ordered that Plaintiff continue taking Nortirptylin for his neuropathic symptoms. Patel attests that he also advised Plaintiff that he needed to control his diet in the same manner and fashion that he did while he was in the SMU in July and August 2004[14], when his diabetes was well controlled since he had no access to junk food and candy from the canteen. Patel attests that while patients may request other medications, it is ultimately his [Patel's] decision or the decision of Dr. Alewine, the Medical Director of the South Carolina Department of Corrections, to make the determination of whether such medicine is necessary. Patel attests that he did not believe, and still does not believe, that a change in neuropathy medication to Neurontin would make an improvement in Plaintiff's condition.

---

[13] Many of Plaintiff's *own* exhibits echo Patel's complaints that Plaintiff was non-complaint with his treatment regimes, in particular his diet. <u>See generally</u> Exhibits 59 (attachments), 61-2, 69.

[14] This is apparently a typographical error. Plaintiff was in the SMU in July and August of 2003.

12



Finally, Patel attests that Plaintiff visited the mental health clinic on October 6, 2005, at which time Plaintiff again requested Neurontin for pain management. Patel attests that Plaintiff was not prescribed Neurontin or any other medication on that occasion, that no psychosis was noted, and that Plaintiff was encouraged to sign up for sick call. Patel attests that he has never been made aware of any order by any physician that Plaintiff receive Neurontin. <u>See</u> <u>generally</u>, Patel Affidavit, with attached Exhibit (medical records).

The Defendant Glenn Alewine has also provided an Affidavit, wherein he attests that he is a physician licensed to practice medicine in the State of South Carolina, and is the Acting Medical Director of the South Carolina Department of Corrections. Alewine attests that in September 2005, Plaintiff was being treated for his diabetic neuropathy with Nortriptyline. Alewine further attests that, although Plaintiff claims he requested different medications from him [Alewine] in September 2005, that after consulting Plaintiff's medical records, he [Alewine] sees no such request. Alewine further attests that he personally has no recollection of any such request from the Plaintiff, and that in any event it is within the discretion of the treating physician, Dr. Patel in this case, to make a determination of proper medication for the Plaintiff. Alewine attests that his review of Plaintiff's medical records reveals that Dr. Patel advised Plaintiff on how to control his diabetic condition, and that he sees no evidence that Plaintiff required a different medication other that Nortirptylin that was prescribed for him by Dr. Patel. In summary, Alewine attests that from a review of Plaintiff's medical records and other documents, he has found no evidence of a serious or significant physical, mental, or emotional injury suffered by the Plaintiff during his incarceration at the Department of Corrections since July 11, 2003, and that while Plaintiff may suffer from diabetic neuropathy or other medical conditions, each of those conditions has been treated adequately and thoroughly through medication and other means of treatment to the extent that the Plaintiff would

13



himself allow.  <u>See</u> <u>generally</u>, Alewine Affidavit.

   In response to the Defendants' motion for summary judgment, Plaintiff has submitted numerous Exhibits and Affidavits.  Many of these documents deal with the purported ADA violations from the period Plaintiff spent in the prison SMU.  Plaintiff also attests in his Affidavit that "there were no facilities for handicap nor wheelchair dependant inmates could be legally house [in SMU], because there was no room large enough for wheelchairs, nor grab bars for toilets, nor shower facilities for disabled inmates in SMU, as it is completely non-compliant with ADA regulations."  Plaintiff's Affidavit, ¶ 11.  <u>See</u> <u>also</u> ¶¶ 18, 79-82.  <u>See</u> <u>also</u> Plaintiff's Exhibit 59 ["Affidavit in Support of Complaint of inadequate treatment of diabetes"].  Plaintiff complains that, because his cell had no grab bar to assist him in getting on and off the toilet, he fell and injured himself.  <u>Id.</u> at 12. Plaintiff sets out in some detail in his Affidavit why he believes he was provided inadequate medical care by Dr. Patel and/or Dr. Alewine, and has also provided numerous other documents, including requests to staff member forms,  publications concerning diabetes and obesity, as well as affidavits from other inmates.

   **Medical Claim**.  To the extent Plaintiff is asserting a medical claim, the undersigned finds no evidence before the Court sufficient to survive summary judgment. In order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Farmer v. Brennen</u>, 511 U.S. 825, 837 (1994); <u>Sosebee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986); <u>Wester v. Jones</u>, 554 F.2d 1285 (4th Cir. 1977); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975); <u>Belcher v. Oliver</u>, 898 F.2d 32 (4th Cir. 1990).  However, the evidence before this Court includes voluminous medical records showing that Plaintiff has received continuous and ongoing treatment for his complaints and medical conditions,



and showing that Plaintiff has been provided with medications, counseling and instructions on how to deal with his diabetes, as well as other general medical care.

While Plaintiff has submitted numerous documents as exhibits, such as requests to staff members forms as well as some previous and current (dating from 2007 and even 2008) grievances wherein he discusses or complains about his medical condition and/or the care he is receiving, these documents are not in and of themselves evidence that any Defendant was being deliberately indifferent to his medical care. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]. Plaintiff also sets forth in some detail in his Affidavits as to why he believes he should be receiving a different level or quality of medical care; however, Plaintiff is not a physician, and therefore his own conclusory and lay opinion about the type of care he should be receiving is not competent evidence to establish a genuine question of fact as to whether any named Defendant has been deliberately indifferent to his serious medical needs. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see also Scheckells, 423 F.Supp. 2d at 348 (citing O'Connor, 426 F.3d at 202)); Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]).

None of Plaintiff's exhibits, which primarily consist of Plaintiff's own statements as



to his condition and desired medical treatment, establish a genuine factual issue sufficient to survive summary judgment.   Conversely, the Defendants have provided affidavits from two medical professionals who have either provided direct care to the Plaintiff and/or reviewed his overall medical records, and who attest that Plaintiff has been afforded continuing and adequate care for his medical complaints.  The undersigned can discern no evidence of a constitutional violation in this evidence. Plaintiff cannot simply rely on his own self-serving and conclusory claims and allegations, unsupported by any objective medical testimony or evidence, to avoid dismissal of this case.  House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate.  That is not, however, the standard here, which is a higher standard of deliberate indifference.  Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"](quoting Farmer, 511 U.S. at 837); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]  The evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, and therefore Plaintiff's federal § 1983 medical claim is subject to dismissal.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law

16



duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

**Conditions of Confinement Claim**.  Plaintiff's claims concerning the general conditions of this confinement while he was in the ECI SMU are essentially a hodgepodge of varying conclusory claims and allegations.[15]  To the extent Plaintiff contends that these conditions constituted deliberate indifference to his serious medical needs, that claim has already been addressed, See discussion, supra.[16]  Plaintiff's claim that he suffered a physical injury as a result of a fall does not, without more, rise to the level of a constitutional violation, as nothing in the medical evidence provided to this Court shows that Plaintiff suffered any serious injury as a result of this fall, or that any named Defendant was deliberately indifferent to a serious injury for which Plaintiff required medical care.  Indeed, Plaintiff's own exhibits support a finding that no serious injury occurred; see Plaintiff's Exhibit 43; and other than Plaintiff's own conclusory allegations, there is nothing in the evidence (and certainly not in the *medical* evidence) to show anything to the contrary.  Norman v.

---

[15]Defendants argue that Plaintiff's claims concerning his conditions of confinement fall outside of the three year statute of limitations, since he was placed in the SMU on July 11, 2003 and did not file this lawsuit until July 13, 2006 (Plaintiff's original Complaint is dated July 12, 2006). However, while Plaintiff would obviously have known about some of his allegations immediately upon his placement in the SMU (such as there being no "grab bar" on the toilet), other matters (such as his claims concerning the showers, lack of recreation, or denial of therapy) would not have been apparent for days, possibly even weeks.  Therefore, out of an abundance of caution, and in light of Plaintiff's pro se status, the undersigned has discussed Plaintiff's conditions of confinement claims on the merits.

[16]The most serious claim Plaintiff raises is the one relating to his CPAP machine.  However, Plaintiff's own exhibits show that he was provided with a cord for his CPAP machine; see Plaintiff's Exhibit 5; and Plaintiff has pointed to no evidence in the medical record of any problem he experienced with his sleep apnea while in the SMU.



<u>Taylor</u>, 25 F.3d 1259, 1263 (4th Cir. 1994)(en banc) [De minimis injury does not state a viable constitutional claim]; <u>Thaddeus-X v. Wodmiak</u>, 2000 WL 7123383, at **3 (6th Cir. May 23, 2000) [Plaintiff must show he suffered more than de minimis injury]; <u>see</u> <u>also</u> <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999).

Plaintiff's claims that the Defendants have not properly followed their own policies and procedures, even if true, also fail to set forth a claim of a constitutional magnitude.  <u>See</u> <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]).  <u>See also</u> <u>Scott v. Hamidullah</u>, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990));  <u>Johnson v. S.C. Dep't of Corrections</u>, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing <u>Riccio</u>, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

Finally, Plaintiff's complaints concerning his showers and lack of outdoor exercise, even if considered to be true for purposes for summary judgment<sup>17</sup>, again do not by themselves implicate a constitutional violation.  <u>Davenport v. DeRobertis</u>, 844 F.2d 1310, 1316-1317 (7th Cir. 1988)[holding weekly showers and unlimited access to washbasin constitutionally sufficient]; <u>Stanko</u>

---

<sup>17</sup>While Plaintiff has submitted some exhibits addressing these issues (none of which shows a constitutional violation), the Defendants have not directly addressed these particular allegations in their evidence, although they do discuss these claims in their brief.  Arguments or statements in briefs are not, however, evidence.  <u>See</u> <u>Estrella v. Bryant</u>, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact]; <u>Gans v. Gray</u>, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; <i>cf.</i> <u>Martin v. Cavalier Hotel Corp.</u>, 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence].



v. Patton, __ F.Supp.2d __, 2008 WL 2923433 at *11 (D.Neb. July 24, 2008); Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at **5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment . . . so long as prisoners have ample opportunity to enjoy indoor activity."]; Stewart v. McGinnis, No. 94-1503, 1995 WL 156599 at * 5 (N.D.Ill. Apr. 6, 1992)[although inmates were not permitted to exercise outdoors during an 85-day lock down period, they were allowed to leave their cells, use the day room, and generally move about the prison, thus undercutting Plaintiff's constitutional claims], aff'd, 5 F.3d 1031 (7th Cir. 1993). During the time period set forth in the Complaint, Plaintiff was a prisoner in a maximum security housing unit, not a hotel.  It should be expected that conditions in such a setting are often times less than ideal.  Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir. 1994); Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)).  The question, therefore, is whether the evidence presented to the Court is sufficient to raise a genuine issue as whether the Plaintiff was denied the minimal civilized measure of life's necessities while in the SMU, or that the Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm [would] result." Farmer, 114 S.Ct. at 1978-1979; Wilson v. Seiter, 501 U.S. 294, 298 (1991).  No such evidence has been presented.  See generally, Beverati v. Smith, 120 F.3d 500, 504 & n. 4 (4th Cir. 1997) [accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]  Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) [prisoner



deprived of toilet paper, soap, toothpaste and toothbrush wile kept in filthy, roach infested cell suffered no punishment when no physical harm resulted];  Chavis, 1995 WL 156599 at **5-6 ["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]; French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Farmer, 114 S.Ct. 1979 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"].

It is important to state that, in making the finding set forth herein above, the undersigned does not intend to minimize Plaintiff's complaints concerning the conditions of his confinement or the difficulty he alleges he faced as a physically impaired inmate while in the SMU, again assuming these allegations in general to be true for purposes of summary judgment.  However, as has previously been stated,  the only issue before this Court is whether sufficient facts have been submitted to raise a genuine question as to whether any of Plaintiff's *constitutional rights* were violated.  The undersigned offers no opinion on whether Plaintiff may have any civil or procedural rights with respect to these claims under state law or policy.  Paul v. Davis, 424 U.S. at 701 [not every claim which may set forth a cause of action under state law is sufficient to set forth a claim for a violation of a constitutional right].

**Possible ADA Violations**.  Plaintiff also makes numerous claims and allegations with respect to possible violations of Title II of the ADA during his period of confinement in the SMU. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such



disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants did not dispute that Plaintiff is a "qualified individual with a disability", and that the Evans Correctional Institution qualifies as "public entity" for purposes of a suit for money damages. See United States v. Georgia, et al., 546 U.S. 151, 154 (2006) ["We have previously held that this term [public entity] includes state prisons"].

However, Plaintiff may only pursue his claims under Title II of the ADA to the extent that his allegations and evidence are also sufficient to create a genuine issue of fact as to whether his claims constitute an independent violation of the Eighth Amendment, made applicable to the States by the Fourteenth Amendment. United States v. Georgia, et al., 544 U.S. 157-159.[18] As the undersigned has already found that no genuine issue of fact as to whether any constitutional violation has occurred has been presented in the evidence, Plaintiff's Title II ADA claim therefore also fails. This finding, of course, is not intended as a finding as to whether Title II ADA violations actually existed in the ECI SMU during the relevant time period, but only that under Wessel, as modified by United States v. Georgia, Plaintiff may not maintain such a claim against the State of South Carolina

---

[18]In Wessel v. Glendening, 306 F.3d 203 (4th Cir. 2002), the Fourth Circuit ruled that Congress did not validly abrogate the sovereign immunity of the States when it enacted Part A of Title II of the ADA, and that an individual could not therefore sue a State under Title II. While United States v. Georgia overruled Wessel to the extent that a Title II ADA claim that also amounts to an independent constitutional violation *can* be pursued against a State, it did not overrule Wessel to any other extent, instead leaving that question to be decided by the lower courts. United States v. Georgia, 546 U.S. at 159. Therefore, to the extent Plaintiff's Title II claims do *not* amount to a constitutional violation, Wessel still controls in this Circuit. Spencer v. Earley, 278 Fed.Appx. 254, 257-259 (4th Cir. 2008); Chase v. Baskerville, 508 F.Supp.2d 492, 501-507 (E.D.Va. 2007).



in this Court.[19]

**State Law Claims.**  Plaintiff also appears to be asserting his disability claims under several state statutes.[20]  As these are state law claims, and there is no independent basis for maintaining these claims in federal court, they should be dismissed, without prejudice, to allow Plaintiff to pursue these claims in state court, should he choose to do so.  United Mine Works v. Gibbs, 383 U.S. 715 (1966); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996); see also 28 U.S.C.A. § 1367(d); Hedges v. Musco, et al., 204 F.3d 109, 123-124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099-1100 (11t Cir. 1998)["A dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"]; Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998)["Section 1367(d) ensures that the plaintiff whose supplement jurisdiction is dismissed has at least thirty days after dismissal to refile in state court."]

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, with prejudice, with respect to Plaintiff's exhausted § 1983 claims.  With respect to the remainder of Plaintiff's § 1983 claims, those claims should be dismissed, without prejudice, for failure to exhaust.  42 U.S.C. § 1997(e)(a); James v. Bock, 127 S.Ct. At 925-926.

---

[19]This finding also applies to the Defendant South Carolina Department of Corrections, since it is a state agency; Battle v. Eagleton, No. 07-1841, 2008 WL 2952349 at * 7 (D.S.C. July 28, 2008); and the individually named natural Defendants cannot be sued under the ADA.  Allen v. College of William & Mary, 245 F.Supp.2d 777, 787 (E.D.Va. 2003); Smith v. South Carolina Dep't of Corrections, No. 03-795, 2003 W 23851177 n. 1 (D.S.C. Aug. 11, 2003).

[20]Plaintiff cites to the "S.C. Handicapped Accessibilities Act (SCHAA), §10-5-210 to 330, rights, S.C. Code of Laws § 43-33-510 et. seq., Bill of Rights for Handicapped Person, the guaranteed opportunities provided in § 43-33-520 and the provisions of §43-33-20, for Equal Rights to Accommodations."  See Amended Complaint, § 38.



Plaintiffs claims under the ADA, as well as any state law claims, also should be **dismissed**, without prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Charleston, South Carolina

October 3, 2008

23



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

